IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **DISTRICT BREWING COMPANY, INC.** d/b/a "Columbus Brewing Company," | : : : | |
| Plaintiff, | : : | Case No. 2:15-CV-3114 |
| v. | : : | JUDGE ALGENON L. MARBLEY |
| **CBC RESTAURANT, LLC** d/b/a "Columbus Brewing Company Restaurant," | : : : : | Magistrate Judge Kemp |
| Defendant. | : : | |

## OPINION & ORDER

Before the Court is the Motion for Preliminary Injunction filed by Plaintiff Columbus Brewing Company (the "Brewery") against Defendant Columbus Brewing Company Restaurant (the "Restaurant") (Doc. 2). The Motion is fully briefed and ripe for review. For the following reasons, the Court **DENIES** the motion.

## BACKGROUND

### A. Factual Background

Plaintiff is a Columbus-based brewery specializing in hand-crafted beers. Defendant is a Columbus-based casual restaurant. Despite having similar names, Plaintiff alleges that the two companies are in no way related. (Doc. 2 at 11-14.) Plaintiff further alleges that Defendant has been infringing on Plaintiff's intellectual property rights for years by using a near-identical logo to Plaintiff's, along with Plaintiff's trade dress designs, script, coloring, and marketing designs both in Defendant's restaurants and in its advertising. (*Id.* at 12-15.) Plaintiff alleges that this has resulted in consumer confusion and a loss of customer good will. (*Id.* at 14-16.)

1

The Brewery was created and filed with the Ohio Secretary of State's Office in 1988. (Compl., Doc. 1, ¶ 7.) Plaintiff first used and registered the trade name "Columbus Brewing Co." in 1989 and has diligently renewed its trade name. (*Id.*, ¶¶ 7-8.) In addition to trade names, Plaintiff owns several registered trademarks for various versions of the "Columbus Brewing Company" trademark, including the trademarked words "Columbus Brewing Co." and various logos thereof. (*Id.*, ¶ 9.)

The Restaurant opened in 1997 as part of a collaboration between developer Jeff Edwards, then the sole owner of the Brewery, and restaurateur Cameron Mitchell. (Doc. 10 at 2.) From that opening until very recently, the Restaurant and the Brewery shared a roof at the intersection of Short Street and Liberty Street in Columbus' Brewery District neighborhood. (*Id.*) From the very beginning of the Restaurant and Brewery's existence, the two were designed to work in tandem. (Test. of Cameron Mitchell, Prelim. Inj. Hr'g, vol. 1 at 127.) Mitchell wanted to open a brewpub, but he had no experience with brewing beer. (*Id.*) He met with brewmaster Ben Pridgeon to discuss entering a business relationship. (Test. of Ben Pridgeon, Prelim. Inj. Hr'g, vol. 4 at 7-10.) Through an entity dubbed TOW, Ltd., Edwards leased the space still occupied by the Restaurant to Mitchell's Company, Columbus Restaurant Development, Ltd. (Doc. 10 at 3.) That lease required the Restaurant to use the name "The Columbus Brewing Company Restaurant." (*Id.*) The lease also allowed the tenant to keep the existing Columbus Brewing Company sign on the restaurant, and required the restaurant to purchase a minimum amount of the Brewery's beer to sell at the restaurant. (*Id.*) Defendant purchased the Restaurant's assets from Cameron Mitchell in 2007, in what it characterizes as a "turnkey" operation. (Pl.'s Reply in Opp. to Def.'s Resp., Doc. 23 at 1; Def.'s Trial Br., Doc. 30 at 2.)

Since opening in 1997, owners of the Restaurant have openly used Plaintiff's name, marks, and logo in an effort to market the Restaurant and the Brewery jointly. (Doc. 10 at 3.) Plaintiff claims that its then vice president (and now owner) Eric Bean objected to Defendant's use of the marks in 2006. (*Id.*) In response to Bean's request, Defendant told Plaintiff that it would continue to use Plaintiff's marks despite Bean's disapproval. (*Id.*)

Plaintiff did nothing else in response to the Restaurant's use of the Brewery's marks until nine years later, serving Defendant with a cease and desist letter in April of 2015. (*Id.* at 3-4.) During those nine years, Defendant used Plaintiff's marks openly and with Plaintiff's full awareness. (*Id.* at 4.) In fact, Plaintiff and Defendant jointly marketed the Restaurant and Brewery in efforts such as "Hop Odyssey," a monthly event where Bean came to the Restaurant to introduce the Brewery's new beer to Restaurant patrons. (*Id.*) Hop Odyssey events and a "tap party" for the Brewery's beer were held at the Restaurant as late as December 2010, all with the full awareness of Bean and other Brewery personnel. (Test. of Eric Bean, Prelim. Inj. Hr'g, vol. 2 at 227-29.) The Restaurant sold the Brewery's beers on tap exclusively for years. (*Id.* at 218-20.) From 2007-2009, the Restaurant was one of the Brewery's biggest customers. (*Id.*) In 2008, the Brewery operated in the red, as it were, to the tune of $200,000. (*Id.*)

Meanwhile, the Brewery's operation soon thereafter grew substantially, increasing production by 400% since 2009 and 1000% since 2005. (Doc. 1, ¶ 38.) The Brewery plans to open a larger facility and its own restaurant services in the future. (Doc. 2 at 18.)

### B. Procedural History

Plaintiff filed its Complaint and Motion for Preliminary Injunction on December 28, 2015. (Docs. 1 and 2.) Defendant filed its Response in Opposition to Plaintiff's Complaint on February 29, 2016. (Doc. 10.) Plaintiff filed its Reply to Defendant's Response on March 5,

2016. (Doc. 23.) Beginning on March 7, 2016, the Court held a hearing on the matter, and the parties presented evidence and elicited testimony from various witnesses. Defendant filed a post-trial brief on March 10, 2016 (Doc. 30), and Plaintiff filed a post-trial brief on March 14, 2016 (Doc. 31).

## II. LEGAL STANDARD

The Sixth Circuit's four-factor balancing test to determine whether injunctive relief is appropriate under Federal Rule of Civil Procedure 65 requires the Court to weigh the following factors:

(1) whether the movant has a strong likelihood of success on the merits;

(2) whether the movant would suffer irreparable injury without the injunction;

(3) whether issuance of the injunction would cause substantial harm to others; and

(4) whether the public interest would be served by the issuance of the injunction.

*Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 233 (6th Cir. 2011). These four factors "guide the discretion of the district court," but "they do not establish a rigid and comprehensive test." *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 102 (6th Cir. 1982). Whether the combination of the factors weighs in favor of issuing injunctive relief in a particular case is left to the discretion of the district court. *See Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

While the Sixth Circuit has held that "the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion," *Leary*, 228 F.3d at 739, the Circuit further clarified that "a party is not required to prove his case in full at a preliminary injunction hearing and the findings of fact and conclusions of law made by a court granting the preliminary injunction are not binding at trial on

4

the merits." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (citations omitted). For a plaintiff to receive the requested injunction, "it is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997). A plaintiff has "the burden of establishing a clear case of irreparable injury and of convincing the Court that the balance of injury favor[s] the granting of the injunction." *Garlock, Inc. v. United Seal, Inc.*, 404 F.2d 256, 257 (6th Cir. 1968).

### III. ANALYSIS

Preliminarily, the Court will address Plaintiff's request for the Court to merge Plaintiff's application for a preliminary injunction with Plaintiff's application for a permanent injunction. The Court declines to do so. Under Sixth Circuit law, a district court may not issue a permanent injunction if there are any outstanding questions of fact. *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1174 (6th Cir. 1995) (finding that the district court had no authority to issue a permanent injunction where two counts requesting legal, as opposed to equitable, relief remained in defendant's counter-claim).

Plaintiff here seeks money, punitive, and treble damages in subparts (b) and (c) of its prayer for relief, along with "any such further relief, both legal and equitable, as may be proper" in subpart (e). (Doc. 1 at 19.) Thus, the Court may not issue a permanent injunction unless and until those matters are settled by a jury, abandoned by Plaintiff, or disposed of entirely by the Court. *See Moltan*, 55 F.3d at 1174.

**A. Likelihood of Success on the Merits**

In its Motion for Preliminary Injunction, Plaintiff contends that it will likely prevail on all claims asserted against Defendant, which are for violations of either the Copyright Act, 17 U.S.C. § 501, or Ohio statutory and/or common law for copyright infringement, trademark infringement, trade dress infringement, deceptive trade practices, and unfair competition. (Doc. 1.) Ohio law trademark infringement and unfair competition claims are analyzed under the same framework as federal claims. *Wheel Specialties, Ltd. V. Starr Wheel Grp., Inc.*, 918 F. Supp. 2d 688, 696-97 (N.D. Ohio 2013). Thus Plaintiff's federal and state law claims will be treated as one.

Defendant argues that Plaintiff's claims are barred by the doctrine of estoppel by acquiescence. Defendant so argues because it alleges that Plaintiff has slept on its rights and has affirmatively granted Defendant license to use Plaintiff's intellectual property. (Def.'s Resp. in Opp'n to First Mot. for Prelim. Inj., Doc. 10.)

Plaintiff counters that it has not slept on its rights or granted Defendant license to use Plaintiff's intellectual property. Plaintiff further argues that, even if the Court finds acquiescence, Defendant may not legitimately assert an estoppel defense because it concern Plaintiff's relationship with Defendant's predecessor-in-interest, and Defendant's predecessor-in-interest did not and could not have transferred any right to use Plaintiff's intellectual property. Alternatively, Plaintiff argues that Defendant's defenses are barred by the doctrine of unclean hands. (Pl.'s Reply in Opp. to Def.'s Resp., Doc. 23.)

*1. Estoppel by Acquiescence*

Defendant admits that it has used Plaintiff's copyrighted logo since 2006. (Doc. 10 at 2.) Since then, Plaintiff allowed Defendant to use the logo without formal objection until April of

2015. (*Id.* at 2-4.) Defendant argues that Plaintiff's conduct has been intentionally misleading and that Defendant's detrimental reliance on Plaintiff's alleged deception estops Plaintiff's copyright infringement claims entirely. *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S.Ct. 1962, 1977 (2014) ("[W]hen a copyright owner engages in intentionally misleading representations concerning his abstention from suit, and the alleged infringer detrimentally relies on the copyright owner's deception, the doctrine of estoppel may bar the copyright owner's claims completely, eliminating *all* potential remedies.") (emphasis added). *Petrella* also provides that, in extraordinary circumstances, "the consequences of a delay in commencing suit may be of sufficient magnitude to warrant, at the very outset of the litigation, curtailment of the relief equitably awardable." *Id.*

The Sixth Circuit refers to acquiescence as "a finding of conduct on the plaintiff's part that amounted to an assurance to the defendant, express or implied, that plaintiff would not assert his trademark rights against the defendant." *Elvis Presley Enter., Inc., v. Elvisly Yours, Inc.*, 743 F.2d 889, 894 (6th Cir. 1991). The defense of acquiescence requires proof of these three elements: "(1) the senior user actively represented that it would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice." *SunAmerica Corp. v. Sun Life Assur. Co. of Canada*, 77 F.3d 1325, 1334 (11th Cir. 1996) (citation omitted). Acquiescence can be found from misleading the defendant through silence. *See Emra Corp. v. Superclips, Ltd.*, 559 F. Supp. 705, 717 (E.D. Mich. 1983); *see also Conan Properties, Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 152 (5th Cir. 1985) (finding acquiescence because the rights-holder sent an autographed picture of himself in front of the alleged infringer's restaurant including the words

7

"best wishes"). In *Freedom Savings & Loan Association v. Way*, a Florida district court found acquiescence because

> Plaintiff knew of defendant's business from the day defendant opened, yet did nothing until defendant filed an application to register the name Freedom Realty. Even after it opposed defendant's application, plaintiff did not write a cease and desist letter until August of 1981, almost five years after the time that it knew defendant was operating under the name Freedom Realty. Plaintiff has shown no reason why this long period of acquiescence should be excused. Furthermore, defendant has expended considerable time, effort and money in promoting his business and his name. He is greatly prejudiced by the fact that plaintiff slept on its rights for almost five years. Therefore plaintiff's claims are barred by laches.

583 F. Supp. 544, 552 (M.D. Fla. 1984) *aff'd*, 757 F.2d 1176 (11th Cir. 1985). In *Ambrosia Chocolate Company v. Ambrosia Cake Bakery*, the Fourth Circuit affirmed the district court's finding of an absolute defense on the grounds of laches and acquiescence because defendant and its affiliates had built a lucrative business over an eight-year period, and plaintiff knew about defendant using the name "Ambrosia" but failed to assert its rights. The district court found the plaintiff "estopped from destroying that business by an injunction which would forbid the use of the name 'Ambrosia' for the cakes of defendant and its affiliates." 165 F.2d 693, 695 (4th Cir. 1947), *cert. denied*, 333 U.S. 882 (1948).

It is uncontroverted that Plaintiff has known of Defendant's use of the Columbus Brewing Company name since 1997, and that Plaintiff has known of Defendant's use of the Columbus Brewing Company's copyrighted logos since 2006. Indeed, evidence indicates that Defendant received the Brewery's logo on a computer disk or other electronic device from someone affiliated with the Plaintiff in 2006, and not once since then did Plaintiff object to Defendant's use of it until April of 2015. (Test. of Eric Bean, Trans. of Prelim. Inj. Hr'g, vol. 2 at 207-09.) Plaintiff's joint participation with Defendant in the "Hop Odyssey" marketing venture also indicates that Defendant was not asserting and did not plan to assert its intellectual

property rights. (*Id.* at 227-29.) Then vice-president (and now owner) Eric Bean told Defendant to stop using Plaintiff's trademarks at some point in 2006. (*Id.* at 226.) But after Defendant told Bean that it would continue to use the marks nonetheless, Plaintiff did absolutely nothing to assert its rights until issuing a cease and desist letter in April of 2015. Indeed, Eric Bean helped create the advertisements for "Hop Odyssey," which included use of Plaintiff's marks in the joint event with the Restaurant. (*Id.*) Plaintiff points to a proceeding it instituted at the United States Patent and Trademark office opposing Defendant's trademark application for "Columbus Brewing Company Restaurant" in 2013. (*Id.* at 208.) But thwarting Defendant's efforts to solemnize the Columbus Brewing Company Restaurant name is not an indication that Plaintiff was going to assert its intellectual property rights against Defendant for Defendant's continued use of Plaintiff's copyrighted property.

During the development of the Brewery and Restaurant, Defendant invested in marketing and developing good will using the logo, including the "Hop Odyssey" marketing events, discussed *supra*.

The Court finds that the foregoing indicates that Defendant's behavior was an active representation that the Brewery would not assert its intellectual property rights against Defendant, that the delay of nearly 20 years in Plaintiff asserting intellectual property rights from the creation of the two entities in 1997 to the first cease and desist letter in 2015 was not excusable, and that such delay has prejudiced Defendants. As such, the Court finds that Plaintiff has acquiesced to Defendant's use of its trademarks. *See SunAmerica*, 77 F.3d at 1334. This does not, however, end the inquiry.

Ordinarily, acquiescence puts the senior and junior users at parity rights-wise. *SunAmerica*, 77 F.3d at 1334. However, acquiescence can be overcome if the Court finds that

"inevitable confusion arises from the continued dual use of the marks." *Id.* (citation and internal quotation marks omitted). And, intuitively, a finding of actual confusion is strong proof of a likelihood of confusion. *Tisch Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d 609, 612 (7th Cir. 1965). Plaintiff has provided voluminous proof of actual confusion, e.g., from Facebook posts to voicemail messages to email correspondence with customers, indicating that many among the general public do not know the difference between the Brewery and the Restaurant. (Doc. 23, Exh. B.)

Here, even though the Court finds that Plaintiff has acquiesced to Defendant's use of its marks, the Court also finds that confusion regarding Plaintiff's intellectual property will inevitably confuse the public, which means Plaintiff will probably eventually prevail on the merits even over Defendant's acquiescence defense.

### 2. Unclean Hands

Plaintiff argues that Defendant's equitable defense should fail because Defendant has "unclean hands." Plaintiff contends that Defendant's application for use of the Columbus Brewing Company trademark was fraudulent. (Doc. 23 at 1-2.) The Court disagrees. Plaintiff has produced no evidence that Defendant was acting in bad faith.

### B. Irreparable Injury

A plaintiff can normally show irreparable injury when infringement causes confusion. *Lucky's Detroit, LLC v. Double L., Inc.*, 533 F. App'x 553, 555 (6th Cir. 2013). Plaintiff notes that it cannot control its own marketing and branding and it asserts that the Restaurant does "not portray the kind of image that the Brewery finds to be in its best interest." (Doc. 23 at 18.) Plaintiff also notes that it must spend resources combatting the confusion that the similar marks of Plaintiff and Defendant have caused. (*Id.*) Given the actual confusion Plaintiff has

10

demonstrated, and the fact that irreparable injury ordinarily flows from such confusion, the Court finds that this factor weighs in favor of Plaintiff.

### C. Harm to Others

The Court must next determine whether granting an injunction would cause "substantial harm to others." *Hunter*, 635 F.3d at 233. In analyzing the harms at issue, the Court considers harm to Defendants as well as any third parties. *Prosonic Corp. v. Stafford*, 539 F. Supp. 2d 999, 1008 (S.D. Ohio Feb. 12, 2008).

Plaintiff asserts that the Court should not consider that harm that flows from Defendant's infringement of Plaintiff's trademark. (Doc. 23 at 19.) The harm to the infringer is not an issue in the analysis. *Worthington Foods, Inc. v. Kellogg Co.*, 732 F. Supp 1417, 1461 (S.D. Ohio 1990) (citation omitted). Because the Court finds that Defendant has not been infringing, the Court will consider the harm to Defendant.

According to the testimony adduced at trial, issuing an injunction prohibiting Defendant from using Plaintiff's marks will likely cause severe harm to Defendant. David Miller, President and Chief Operating Officer of Cameron Mitchell Restaurants, testified that rebranding to a different name and using different logos would be "very detrimental." (Transcr. of Prelim. Inj. Hr'g, vol. 1 at 205.) He testified as much because having to rebrand with a new name and emblems would likely force a restaurant to close for a period of time while changing much of the interior, along with other aspects of the business. (*Id.*) ("I can tell you what we would do and for us in the 20 years of experience we've had running this business as we have when we've re-branded, we've basically closed the restaurant and rename it and recreate a new brand, a new menu, a new design, a new layout, and all that can vary in degrees. But to some degree,

11

something along those lines is how I think you do. And then on top of that you have to back it up with advertising and marketing to let your guests know what it is.").

The Court finds that this factor weighs heavily in favor of Defendant.

### D. The Public Interest

Preventing confusion is the Court's utmost goal. *See SunAmerica*, 77 F.3d at 1336. The public interest is best served by stopping such confusion. *Abercrombie & Fitch v. Fashion Shops of Ky.*, 363 F. Supp. 2d 952, 968 (S.D. Ohio 2005). Given Plaintiff's showing of actual confusion among the public, this factor weighs in favor of Plaintiff.

### **CONCLUSION**

The Court finds that Plaintiff has acquiesced to Defendant's use of its intellectual property, that issuing a preliminary injunction now would severely harm Defendant and that, although there is confusion and the public interest is served by reducing such confusion, the balancing of the relevant factors weighs against enjoining Defendant from using the marks now.

As discussed in pt. III, *supra*, the Court will not reach the merits of the case now, but the Court will alert parties to the Court's directive eventually to "give due consideration to the parties' legitimate interests by considering the full range of remedial alternatives available to cure marketplace confusion," and, "[w]hen feasible and effective," to "fashion a remedy less harsh than the strong medicine of a total injunction." *SunAmerica*, 77 F.3d at 1337. Although sometimes a total injunction is necessary to cure the problem,

> the hardship of a total injunction against a junior user in an acquiescence case is permissible *only if* the junior user fails to demonstrate the availability of a feasible and effective alternative means of redressing the senior user's revived claim and vindicating the public interest in eliminating marketplace confusion, without causing undue hardship to the senior user.

*Id.* (emphasis added). Because the Court is not persuaded at this time that such alternative remedies are unavailable to Plaintiff, the Court declines to issue the drastic remedy of an injunction now.

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Preliminary Injunction.

**IT IS SO ORDERED.**

                                                                           s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: April 6, 2016**