IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DISTRICT BREWING COMPANY, INC. d/b/a "Columbus Brewing Company," <br><br> Plaintiff, <br><br> v. <br><br> CBC RESTAURANT, LLC d/b/a "Columbus Brewing Company Restaurant," <br><br> Defendant. | Case No. 2:15-CV-3114 <br><br> JUDGE ALGENON L. MARBLEY <br><br> Magistrate Judge Vascura |

## OPINION & ORDER

This matter is before the Court on Defendant CBC Restaurant, LLC's ("the Restaurant" or "Defendant") Motion for Summary Judgment. (Doc. 50.) For the reasons detailed below, the Restaurant's motion is **DENIED**.

### I. BACKGROUND

#### A. Factual Background

In 1988, Plaintiff District Brewing Company ("the Brewery") was established by Jeff Edwards. (Compl., Doc. 1, ¶ 7.) The Brewery first used and registered the trade name "Columbus Brewing Company" one year later, and has continued to renew diligently its trade name. (*Id.* ¶¶ 7–8.) The Brewery entered into a lease for the building located at the intersection of Short Street and Liberty Street in Columbus's Brewery District Neighborhood in 1995. (*See id.* ¶ 13.) The building was owned by TOW, Ltd., whose part owner and managing member was also Edwards. (*See id.*) By 1997, Edwards was the sole owner of the Brewery. (*See* Op. & Order on Pl.'s Mot. Prelim. Inj., Doc. 33, at 2.)

In 1997, the Columbus Brewing Company Restaurant opened as a collaborative venture

between Edwards and restauranteur Cameron Mitchell. (*Id.*) Because Edwards and Mitchell had always planned for the Brewery and Restaurant to work together under the same roof, Edwards leased the front portion of the Brewery's building to Mitchell's restaurant company (Defendant's predecessor-in-interest). (*See id.*) Under the lease, Mitchell's restaurant company had the right to use the name "the Columbus Brewing Company Restaurant"—and was in fact required to do so. (*Id.*) The lease also required the restaurant to purchase a minimum amount of the Brewery's beer to sell, and allowed it to keep the existing "Columbus Brewing Company" sign on the building. (*Id.*) In 2007, Defendant purchased the restaurant from Mitchell's company, and the original lease remains in effect. (*Id.*)

Since its opening in 1997, the Restaurant has openly used the "Columbus Brewing Company" name, marks, and logo to advertise the Restaurant and the Brewery jointly. (*Id.* at 3.) And the Restaurant had only the Brewery's beers on tap for years. (*Id.*) In fact, during a two-year period (2007–2009) when the Brewery struggled financially, the Restaurant was its biggest customer. (*Id.*)

In 2006, nearly a decade after the Restaurant opened, then-Vice President of the Brewery, Eric Bean, objected to the Restaurant's use of the Brewery's marks. (*See id.*) This was the first time anyone affiliated with the Brewery objected to the Restaurant's use of its marks. (*Id.*) After Bean's objection, the Restaurant simply informed him that it would continue to use the marks, and no one objected to this use for nine more years. (*Id.*) Indeed, during those nine years, the parties continued to market themselves as a joint venture, including by holding monthly "Hop Odyssey" events—where Bean came to the Restaurant and introduced the Brewery's new beers to diners—and "tap parties" for the Brewery's beers at the Restaurant. (*See id.*)

2

By 2015, Bean assumed full ownership of the Brewery, which had grown substantially since 2009. (*See* Doc. 1 ¶ 38.) To account for this growth, the Brewery planned to open a larger brewing facility, to which it located in 2016. (*See id.*) Shortly before relocating, the Brewery sent a cease-and-desist letter to the Restaurant, demanding that the Restaurant stop its use of the "Columbus Brewing Company" name, marks, and logo. (*Id.* ¶ 18, Ex. F.)

After the Brewery filed this lawsuit and the Court denied its motion for preliminary injunction (discussed below), the Restaurant claims that it "embarked on a campaign to systematically eliminate each and every use of the 'Columbus Brewing Company Restaurant' name, mark, and logo used throughout its business." (Def.'s Mot. Summ. J., Doc. 50, at 8.) Specifically, the Restaurant claims it has done all of the following, with the help of a marketing firm it hired, between July 2016 and January 2017:

- Altogether eliminated the use of the name "The Columbus Brewing Company Restaurant";

- Created a new logo using its "CBC Restaurant" tradename in a different color, font, shape, and size, as compared to its previous logo;

- Changed its domain name from columbusbrewingco.com to dinecbccolumbus.com;

- Updated its website to reflect its new marks, logo, and name;

- Changed all menus, lobby posters, and table toppers to reflect new marks, logo, and name;

- Purchased new uniforms and retail items bearing new marks, logo, and name;

- Replaced all barware and growlers with those bearing new marks, logo, and name;

- Updated social media accounts (e.g., Facebook and Twitter) to new handles and new marks, logo, and name;

- Removed all photos and signage of Brewery inside the Restaurant;

- Painted the inside of the Restaurant and removed the large mural in the bar area which bore the Brewery's original logo;

3

- Removed and replaced the large sign displayed on the top of the building;

- Trained staff to properly educate patrons who might display any level of confusion regarding an affiliation between the Restaurant and the Brewery;

- Updated furniture inside the Restaurant;

- Eliminated use of the name "The Columbus Brewing Company Restaurant" on its telephone on-hold system;

- Contacted third parties such as Google and online restaurant reviews requesting that all names and logos be changed to reflect CBC Restaurant's proper name and logos;

- Changed point of sale system to new marks, logo, and name.

(*Id.* at 8–9.) Making all of these changes cost the Restaurant a substantial amount of money. (*See* Affidavit of Doug Griggs ("Griggs Aff."), Doc. 50-1, ¶ 8.)

While the Restaurant maintains that making these changes has cured, for the most part, public confusion about the affiliation between the Brewery and the Restaurant, the Brewery notes that even the Restaurant's current owner, Doug Griggs, concedes that confusion remains about this issue.[1] (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J., Doc. 54, at 3 (citing Deposition of Doug Griggs ("Griggs Dep."), Doc. 52-1, at 17, 19, 20, 21).) In addition, the Brewery has submitted a "mountain of empirical evidence" demonstrating that public confusion persists even after the Restaurant's abandonment of the "Columbus Brewing Company Restaurant" name in favor of "CBC." (*See* Doc. 55.) Accordingly, the Brewery argues that "there is a material fact genuinely in dispute as to whether the Restaurant's rebranding from 'Columbus Brewing Company Restaurant' to 'CBC Restaurant' has cured public confusion as to the source,

---

[1] In an affidavit attached as an exhibit to the Restaurant's motion for summary judgment, Griggs asserted that the Restaurant was "not currently experiencing any confusion with respect to the source, affiliation, ownership, or sponsorship between the restaurant and the brewery." (*See* Griggs Aff. ¶ 10.) This statement conflicts with Griggs's earlier deposition testimony. The Court will not consider the statement in Griggs's affidavit, because a party cannot create a genuine dispute of material fact by filing an affidavit with a motion for summary judgment that essentially contradicts his earlier deposition testimony. *See Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir. 1997) (citation omitted).

4

affiliation, sponsorship or approval of the goods and services offered by the parties" that precludes summary judgment. (Doc. 54 at 3.)

The Brewery also asserts that there is a material fact genuinely in dispute "as to whether the Brewery used the 'CBC' mark as a trademark prior to the Restaurant." (*Id.* at 4.) According to the Brewery, it is the "senior user of the CBC mark over the Restaurant," having widely used the CBC "oval logo on point of sale displays and in connection with its beer" for over twenty years. (Affidavit of Eric Bean ("Bean Aff."), Doc. 56-20, ¶ 13.) The Brewery also maintains that it has used the CBC logo on its "delivery trucks, sold or distributed merchandise, such as hats and stickers with 'CBC,' used 'CBC' as a sign on the Brewery door visible to all its distributors, distributed tin signs with the 'CBC' logo to retail customers and used 'CBC' within the Brewery's website and social media accounts to refer to both the Brewery and its beer." (*Id.*) The Restaurant disputes this, arguing that the Brewery's assertion that it is the senior user of the CBC mark is based solely on a July 2016 tweet by its former Vice President of Sales, Jason Davis, which contains "a photograph of a small CBC sticker on the glass doors of a beer cooler at a local carryout alongside the caption[:] "*I hung this 20 years ago at Palmers Beverage. Surreal to see we've held shelf space all these years.*" (Doc. 50 at 15 (emphasis in original).)

### B. Procedural History

The Brewery filed its complaint (Doc. 1) and motion for preliminary injunction (Doc. 2) against the Restaurant in December 2015. After a hearing, the Court denied the Brewery's motion. (Doc. 33.) In so doing, the Court held that the Brewery acquiesced to the Restaurant's use of its intellectual property, and that—in spite of public confusion—issuing a preliminary injunction would severely harm the Restaurant's interests. (*Id.* at 12.) The Court alerted the parties that it would "give due consideration to the parties' legitimate interests by considering the

full range of remedial alternatives available to cure marketplace confusion," and, if "feasible and effective," ultimately "fashion a remedy less harsh than the strong medicine of a total injunction." (*Id.* (quoting *SunAmerica Corp. v. Sun Life Assurance Co. of Can.*, 77 F.3d 1325, 1337 (11th Cir. 1996)).)

Following the Court's order declining to issue a preliminary injunction, the Brewery filed a motion to sever and dismiss with prejudice its claims for monetary and punitive damages, leaving only its claims for injunctive relief to be adjudicated.[2] (*See* Pl.'s Mot. to Sever, Doc. 37.) The Court granted the Brewery's motion. (Order, Doc. 47.) The Restaurant now moves for summary judgment on all of the Brewery's claims for injunctive relief. (Doc. 50.) The motion is fully briefed and ripe for review by this Court.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The mere possibility of a factual dispute is insufficient to defeat a motion for summary judgment. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). Summary judgment is inappropriate, however, "if the dispute about a

---

[2] The complaint includes claims for copyright infringement (Count One), trademark infringement (Count Two), trade dress infringement (Count Three), violations of the Ohio Deceptive and Unfair Trade Practices Act (Count Four), violations of Ohio common law regarding unfair competition (Count Five), and unjust enrichment (Count Six).

material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The necessary inquiry for this Court is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251–52). In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party. *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient to survive the motion; there must be evidence on which the jury could reasonably find for the opposing party. *See Anderson*, 477 U.S. at 251; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995).

Trial courts typically disfavor deciding trademark cases on summary judgment, because the ultimate issues are "so inherently factual." *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1356 n.5 (9th Cir. 1985).

### III. LAW & ANALYSIS

#### A. The Brewery's Claims Are Not Moot.

The Restaurant first argues that it is entitled to summary judgment because all of the Brewery's claims are moot. A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 473 (6th Cir. 2008) (quoting *L.A. Cty. v. Davis*, 440 U.S. 625, 631 (1979)). A case is not mooted by a "defendant's voluntary cessation of a challenged practice." *Ammex, Inc. v. Cox*, 351 F.3d 697, 704 (6th Cir. 2003) (citation omitted). Rather, "voluntary conduct moots a case only in the rare instance where subsequent events made it

7

absolutely clear that the allegedly wrong behavior could not reasonably be expected to recur." *Brunner*, 548 F.3d at 473 (citation omitted). The party asserting mootness "bears the heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." *Id.*

The crux of the Restaurant's mootness argument is that no case or controversy exists because "[w]ithout exception," the Restaurant has ceased using any of the names, marks, or logos identified in the Brewery's complaint. (*See* Doc. 50 at 10.) The Restaurant notes that it has spent tens of thousands of dollars "systematically eliminat[ing]" all references to the "Columbus Brewing Company Restaurant" name, marks, and logos, and points to the "irrefutable fact" that it will *never* go back to its use of this name or marks or logos as evidence of mootness. (*See id.* at 11.) In the Restaurant's eyes, there is "[l]iterally . . . nothing more it can do short of abandoning the only remaining connection it has to its long-recognized brand as 'CBC Restaurant'"—a measure that would be incredibly detrimental to the Restaurant. (*Id.* at 12.)

The Brewery's retort is that whether the Restaurant has phased out the use of the words "Columbus Brewing Company Restaurant" and "Columbus Brewing Company" is beside the point, because the allegations in the Brewery's complaint and motion for preliminary injunction also seek to enjoin the Restaurant from using "related trademarks" and "trademarks confusingly similar to [the Brewery's] trademarks," including the "CBC" acronym. (*See* Doc. 54 at 10; *see also* Doc. 1 ¶¶ 46, 47, 68, 72, 87; Doc. 2 at 2, ¶ 3.)

The Court agrees with the Brewery. In its motion for preliminary injunction, the Brewery explicitly moved the Court to enjoin and restrain the Restaurant from using the Brewery's "'CBC' acronym." (Doc. 2 at 2, ¶ 3.) And under Federal Rule of Civil Procedure 8, the

8

allegations in the Brewery's complaint that the Restaurant is using trademarks and trade dress that are "confusingly similar" to the Brewery's, "near-identical names and logos," and "related trademarks" to the Columbus Brewing Company name (*see* Doc. 1 ¶¶ 46, 47, 72) are sufficient to put the Restaurant on notice that the Brewery seeks to enjoin its use of *all* of the Brewery's trademarks—which, construing the facts most favorably to the non-moving Brewery, include the "CBC" acronym. Fed. R. Civ. P. 8(a)(2); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (Rule 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Because the Restaurant's virtual elimination of the "Columbus Brewing Company" name from its business does not impact the Brewery's claims regarding the "CBC" mark, the Restaurant has not met its "heavy burden" of establishing that the Brewery's claims are moot. *Brunner*, 548 F.3d at 473.

### B. A Genuine Dispute of Material Fact Exists as to the Brewery's Interest in the "CBC" Mark.

The Brewery asserts common law rights over the unregistered "CBC" mark.[3] Common law ownership of trademarks depends on priority of use, and the true owner and "senior user" of a mark is the first individual or company to use the mark in the sale of goods or services. 2 McCarthy on Trademarks and Unfair Competition § 16:4 (5th ed. Sept. 2017) (hereinafter "McCarthy"). In order to establish ownership of a mark, the senior user must not only show that it used the mark at some point in the past, but also that such use has continued to the present.

---

[3] The Brewery's claims based on Ohio common law are analyzed under the same standards as federal trademark infringement claims. *See Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 288 (6th Cir. 1997).

9

*Id.* at §16:9. Once established, senior use "confers both the right to use a particular mark and the right to prevent others from using the same or a confusingly similar mark." *Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1106 (6th Cir. 1991).

According to the Restaurant, there is no question that it was the first to use the mark in the sale of goods or services. The Restaurant claims that it was the first to use the "CBC" mark in the 1990s, because it was first used by its predecessor in interest at that time. (*See* Doc. 50 at 13.) There is no dispute that the "CBC" mark has appeared on the Restaurant's menu and signs since 1997, and that the Restaurant began using the "CBC" mark exclusively in 2016. The question is whether the Brewery's: (1) placement of a sticker using the "CBC" logo on a beer cooler approximately twenty years ago renders it the "senior user"; and (2) "limited, sporadic" use of the "CBC" mark after the placement of the sticker evinces an "active and public intent" to establish trade under the mark. *See Allard Enters., Inc. v. Advanced Programming Resources*, 146 F.3d 350, 358 (6th Cir. 1998).

In *Allard*, the Sixth Circuit noted that "[a]s long as there is a genuine use of the mark in commerce . . . ownership may be established even if the first uses are not extensive and do not result in deep market penetration or widespread recognition." *Id.* at 358. Accordingly, the Court found that the defendant's use of a mark "when he sent resumes and at least one fax" was sufficient to establish prior ownership rights in the mark. *Id.* at 356, 359. The Sixth Circuit later clarified *Allard* in *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047 (6th Cir. 1999). According to the *Circuit City* court, the *Allard* decision "did not abandon the long-standing rule that ownership rights stem only from deliberate and continuous rather than sporadic use of a mark," because the *Allard* court "did not point to any evidence showing that the defendants used the mark selectively or that they failed to use it pervasively in all their commercial dealings, even

if these dealings were low in volume." *Circuit City*, 165 F.3d at 1055. The *Circuit City* defendants, by contrast, "repeatedly failed" to use the mark at issue in "basic commercial contexts such as their telephone listing, store signs, newspaper ads and other customer information." *Id.*

The Restaurant claims that this case is akin to *Circuit City*, because the Brewery, like the *Circuit City* defendants, has used the "CBC" mark only sporadically. Specifically, the Restaurant points to: (1) Bean's testimony that the Brewery does not use the "CBC" mark and his dissatisfaction with the use of "CBC" to describe the Brewery's beer (Deposition of Eric Bean ("Bean Dep."), Doc. 20, at 212–13); (2) Bean's testimony that the Brewery has not used the "CBC" mark on its labels, packaging, kegs, or tap handles (*id.* at 238–39); and (3) Bean's admission that the Restaurant was using the "CBC" mark in 2005 when he first started working at the Brewery (*see id.* at 107–09), as evidence that the Brewery has largely failed to use the "CBC" mark in basic commercial contexts.

The Brewery, however, asserts that it has alleged sufficient facts to create a genuine dispute of material fact as to its interest in the "CBC" mark on several grounds. (*See* Doc. 54 at 13.) First, while the Brewery does not dispute that it lacks registered rights or pending trademark registrations for the name "CBC," it argues that it is protectable as an abbreviation or nickname for its registered "Columbus Brewing Company" trademark. (*See id.*) Under the Lanham Act, a party can assert a trademark infringement claim even if that trademark is unregistered. *See* 15 U.S.C. § 1125(a)(1)(A); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) ("[I]t is common ground that § 43(a) protects qualifying unregistered trademarks."). Further, trademark law protects the abbreviations and nicknames of recognized trademarks. (*See* Doc. 54 at 14 (collecting cases).)

In addition, the Brewery claims that *it*, rather than the Restaurant, is the senior user of the "CBC" mark, based on its "widespread use of its 'CBC' oval logo on point of sale displays in connection with its beer" for over twenty years. (Bean Aff. ¶ 13.) The Brewery takes issue with the Restaurant's characterization of its use of this logo at point of sale displays as the mere placement of a single sticker on a cooler at Palmers Beverage. (*See* Doc. 50 at 15.) Not only has the Brewery used the "CBC" logo at points of sale for over two decades, it argues, but also the Brewery has: (1) used the "CBC" logo on its delivery trucks; (2) used the "CBC" logo as a sign on the Brewery's door; (3) distributed merchandise containing the "CBC" oval logo, such as hats, stickers, and tin signs; and (5) used the "CBC" logo on the Brewery's website and on its social media accounts to refer to the Brewery and its beer. (*See* Bean Aff. ¶ 13.) Bean also testified that the Brewery regularly refers to itself as "CBC," because it is an "acronym" for the Columbus Brewing Company. (*See* Bean Dep. at 241.)

Therefore, the Brewery argues, it has set forth sufficient evidence to raise a genuine dispute of material fact over who is the senior user of the "CBC" mark. The Court agrees. *First*, construing the facts in favor of the non-moving Brewery, as is required on a motion for summary judgment, the Court will assume that the Brewery was the first user of the "CBC" logo—when it placed stickers of the logo at point of sale displays throughout Columbus in connection with its beer.[4]

*Second*, although there is evidence in the record that the Brewery has not used the "CBC" logo in *all* commercial contexts (*see* Bean Dep. at 107–09, 212–13, 238–39), the Brewery's use of the logo has been more than sporadic. Indeed, the instant case is distinguishable from *Circuit City* for several reasons. In *Circuit City*, the defendants repeatedly failed to use the mark in basic

---

[4] The Court will also assume that, as the Brewery asserts, more than a single logo sticker was displayed, in contrast to the Restaurant's representation.

12

commercial contexts, such as on the store's sign and in other methods of providing customer information. *See Circuit City*, 165 F.3d at 1055. Here, the Brewery used the "CBC" logo on a sign on the Brewery's door, on its delivery trucks, and on merchandise. Also, the Brewery refers to itself as "CBC" and uses the "CBC" logo on the Brewery's website and social media accounts, which are used to disseminate information to its customers. Finally, and most importantly, as the Brewery pointed out at oral argument, using the "CBC" logo at point of sale displays in places where consumers purchase its beer is likely the most important commercial context in which it could use this logo—and the Brewery claims that it has been doing so for twenty years.

*Third*, the *Circuit City* court found that there was no "evidence of public awareness of the disputed service mark's association with the defendants' business." *Id.* at 1055. Here, the record is replete with evidence that the public is confused about the affiliation between the Restaurant and the Brewery and whether the "CBC" logo refers to only one of the parties or to the parties operating as a joint venture. (*See, e.g.*, Doc. 55.) *Fourth*, in *Circuit City*, there was evidence of a defendant fabricating evidence to establish prior ownership of the mark, which is not the case here. *See Circuit City*, 165 F.3d at 1051, 1054.

*Finally*, *Circuit City* is distinguishable because it did not involve an abbreviation, acronym, or nickname of a recognized trademark. For all of these reasons, the Court finds that there is a genuine dispute of material fact as to which party is the "senior user," rendering this case inappropriate for disposal on summary judgment.

### C. The Court Need Not Address the Acquiescence Defense and the "Inevitable Confusion" Doctrine.

According to the Restaurant, irrespective of which party is the senior user of the "CBC" mark, judgment as a matter of law in favor of the Restaurant is warranted here, because the Brewery has acquiesced to the Restaurant's use of its marks. (*See* Doc. 50 at 18.) Indeed, the

13

Court already ruled that the Brewery acquiesced to the Restaurant's use of its marks in its Opinion and Order denying the Brewery's motion for preliminary injunction. (Doc. 33 at 8–10.) The Brewery, on the other hand, asserts that the doctrine of inevitable confusion overcomes the Restaurant's acquiescence defense—which the Court also recognized by noting in its April 6, 2016 Opinion and Order that the Brewery would "probably eventually prevail on the merits even over Defendant's acquiescence defense." (*Id.* at 10.)

Acquiescence is an affirmative defense to a trademark infringement claim, which requires "a finding of conduct on the plaintiff's part that amounted to an assurance to the defendant, express or implied, that plaintiff would not assert his trademark rights against the defendant." *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F2d 889, 894 (6th Cir. 1991). To establish an acquiescence defense, a party must prove the following three elements: "(1) the senior user actively represented that it would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice." *SunAmerica*, 77 F.3d at 1334.

The defense of acquiescence is not absolute. *Id.* Ordinarily, a showing of acquiescence causes the junior and senior users' rights in the mark to "stand in parity," but "[u]pon a showing that 'inevitable confusion' arises from the continued dual use of the marks, a senior user's claim may be revived from estoppel." *Id.* Because "inevitable confusion" is a "fact-intensive" inquiry, the doctrine "does not lend itself to a formulaic, mechanical definition." *Id.* at 1334 n.3. The *SunAmerica* court found it "sufficient to note that 'the standard of confusion required for a finding of inevitability of confusion is an increment higher than that required for a finding of a likelihood of confusion.'" *Id.* (citation omitted). Evidence of actual confusion is often difficult to come by in trademark and unfair competition cases, so naturally, any evidence of actual

confusion is "substantial evidence of likelihood of confusion." *Tisch Hotels v. Americana Inn, Inc.*, 350 F.2d 609, 612 (7th Cir. 1965).

While the parties thoroughly briefed issues pertaining to the acquiescence defense and the inevitable confusion doctrine, and the Brewery claims that the "overarching issue in this case is whether the parties have found 'remedial alternatives available to cure marketplace confusion' that are 'feasible and effective' to 'fashion a remedy less harsh than the strong medicine of a total injunction'" (Doc. 54 at 1), the Court disagrees that these are central issues in the case at this juncture. Rather, as discussed above, and as recognized by the Restaurant, the Court need not even reach the acquiescence defense or the inevitable confusion doctrine, as there is a genuine dispute of material fact regarding the threshold issue of who is the "senior user" of the CBC mark. (*See* Doc. 57 at 2.)

The Court stands by its findings in the Opinion and Order denying the Brewery's motion for preliminary injunction, and incorporates those findings regarding acquiescence and inevitable confusion herein. Even after further development of the evidentiary record, there remains an abundance of evidence showing *both* that the Brewery acquiesced to the Restaurant's use of its marks *and* that the public is actually confused as to the difference between the Brewery and the Restaurant. Thus, because determining acquiescence and a likelihood of confusion will be a fact-intensive inquiry, and because there are questions of fact surrounding the threshold question of which party is the senior user of the "CBC" mark, summary judgment is not warranted here.

## IV. CONCLUSION

For the reasons discussed above, the Court **DENIES** the Restaurant's Motion for Summary Judgment.

**IT IS SO ORDERED.**

s/Algenon L. Marbley
ALGENON L. MARBLEY
UNITED STATES DISTRICT JUDGE

DATED: November 7, 2017